In The

# United States District Court
# Southern District of Florida

| | | |
|---|---|---|
| THOMAS KENNEDY, | ) | Number: 1:22-cv-21827-KMW |
|     PLAINTIFF, | ) | |
| v. | ) | |
| RONALD DESANTIS, ET AL, | ) | |
|     DEFENDANTS. | ) | |

### Motion to Allow e-filing as an ADA accommodation

NOW COMES, Scott Huminski ("Huminski"), and moves for permission to e-file in this case as an ADA accommodation as follows:

Huminski has been fully disabled pursuant to a Social Security determination for over a decade and his sole source of income is Social Security disability. Huminski is indigent and has a limited ability to travel.

The policy of this Court to force the disabled indigent to travel to copy stores, pay for copies, travel to shipping outlets and pay for shipping discriminates against the disabled indigent and places able-bodied and well funded attorneys at an advantage in legal proceedings. Defendant DeSantis' counsel is paid out of the treasury of Florida, has unlimited funds for litigation and doesn't suffer the delay, travel, cost and prejudice associated with engaging in litigation in the pre-personal computer era forced upon the indigent disabled via this Court's rules.

Dated at Miami, Florida this 1st day of July, 2022.
-/S/- Scott Huminski

Scott Huminski, pro se
P.O. Box 353820
Palm Coast, FL 32135
(239) 300-6656
S_Huminski@live.com

FILED BY _____ D.C.
JUL 11 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

Certificate of Service

Copies of this document and any attachment(s) was served upon the parties via the U.S. Mails and/or email and/or the e-filing system in this case.
Dated this 1st day of July, 2022.
-/s/- Scott Huminski

_____
Scott Huminski

2

In The
# United States District Court
# Southern District of Florida

| | | |
|---|---|---|
| THOMAS KENNEDY, | ) | Number: 1:22-cv-21827-KMW |
| PLAINTIFF, | ) | |
| v. | ) | |
| RONALD DESANTIS, ET AL, | ) | |
| DEFENDANTS. | ) | |

## MOTION TO INTERVENE

NOW COMES, Scott Huminski ("Huminski"), and moves to intervene pursuant to F.R.C.P. 24 as follows:

1. A central gravamen of the Complaint is that Ronald DeSantis engages in a systemic procedure, policy, custom or practice of silencing First Amendment speech via the use of notorious discriminatory tactics targeting speech of those of a specific group such as the Plaintiff and Huminski, both staunch critics of the Florida Governor and police state. In the case at Bar, one of those viewpoints is that residents of Florida have the right to freedom of speech absent the fear of governmental retaliation or viewpoint discrimination based upon a criteria such as the content of speech or, more succinctly, speech with content that discusses topics that the government is uncomfortable with, such as, what Plaintiff and Huminski consider unconstitutional and oppressive conduct of Ronald Desantis.

2. Huminski, a 10 year resident of Florida, is a long-time critic of the "plodding steer of the State" whether it be in Huminski v. Corsones, 396 F3d 53, 90 (2nd Cir 2005), or as the leader and founder of Scott X and the Constitution Commandos, an anti-Police-State rock band, with half a million views of their youtube music videos. See Exhibit "A", WHEN COURTS SUBVERT LAW TO BANISH A CRITIC, CHARLES LEVENDOSKY c. 2000 Casper (Wyo.) Star-Tribune (discussing Huminski's First Amendment issues).

3. In retaliation for Huminski's anti-Police-State First Amendment core protected political expression, Ronald DeSantis engaged in the following retaliatory conduct:
    - In 2021 and 2022 Ronald DeSantis engaged in a course of conduct in the Florida State courts that sought to silence any and all communication by

3

Huminski with the entire State of Florida government for life that was preceded by the following patently illegal/unconstitutional deeds,

- Huminski was criminally prosecuted in <u>State v. Huminski</u>, 17-MM-815, Lee County Court **absent** a State of Florida charging document authored by the State or signed by a legitimate State of Florida prosecutor with the only document that could be deemed as a commencement/charging document being a show cause order copied from another Florida Court (the 20th Circuit Court), a true and correct copy of the order attached to an associated Court Paper are attached hereto as Exhibit "B".

- A state prosecutor did show up at hearings in <u>State v. Huminski</u> and, of course, successfully pursued the case to criminal conviction absent the filing of a charging document and without bothering to serve Huminski with a commencement document.

- At conviction the State of Florida insisted upon an order barring Huminski from any contact with the State of Florida for life. A true and correct copy of a court filing of Huminski detailing the lifetime First Amendment censoring of Huminski and other case details in <u>State v. Huminski</u> is attached hereto as Exhibit "C". Included in Exhibit "C" are papers forbidding Huminski from reporting crime to his local sheriff as another violation of the First Amendment absent any procedural or substantive Due Process. A First Amendment summary punishment. The State stipulated in the case that Huminski could speak to his local sheriff only if spoken to and reporting crime and other communication was prohibited. Excerpt prohibiting Huminski communication below, for life, whereby Huminski's local sheriff was a defendant in the "civil" case and the State of Florida was the plaintiff in <u>State v. Huminski</u>. No communication by a resident of the State to the entire State of Florida government. A bit over-broad considering the "parties".

4. In State court litigation in the 11th Judicial Circuit and the 3rd District Court of Appeal, Defendant DeSantis conspired with Florida Attorney General Ashley Moody to make the lifetime speech prohibition set forth in the prior paragraph permanent. This conduct

4

appears to violate 18 U.S.C. 241, 242, a criminal statute that can not be prosecuted by Huminski nor Plaintiff.

5. Huminski did not only suffer the same First Amendment viewpoint based discrimination as the Plaintiff, and Due Process/Equal Protection violations – he was incarcerated for his speech "crime" and, as a fully disabled American for the last 10 years determined by the Social Security Administration, continues to suffer shock and injury to mind and body and the expected products of a *void ab initio* criminal judgment including prejudice in obtaining credit, housing, employment and continued harassment from Ronald DeSantis, via on-going collection activities arising from the State v. Huminski void "criminal" judgment concerning fines, costs and fees that Defendant DeSantis fought vigorously to maintain in 2021 and 2022 in State courts. These ill-gotten gains and pecuniary windfalls demanded by the State, to this day, only apply to a statutory criminal conviction in a case that, in the best light, was a *sui generis* common law case – contempt, whereby, only the allegedly offended Court has the ability to hear and conduct a trial (i.e. only the 20th Circuit Court had subject matter jurisdiction to hear contempt in Huminski v. Town of Gilbert, Et al., 17-CA-421, not a County Court criminal case captioned as State v. Huminki). See Huminski v. State, 2d19-1247 (FL 2 DCA 2019) (hearing contempt private to the allegedly offended Court). See also Exhibit "B". See Generally, *South Dade Farms v. Peters*, 88 So. 2d 891 (Fla. 1956). If a court enters an order prior to the filing of proper pleadings, the court lacks jurisdiction. Lovett v. Lovett, 93 Fla. 611, 112 So. 768, 775-76 (1927). Despite the lack of jurisdiction, Defendant DeSantis chose to conspire with Ashley Moody, Esq. to assure that Huminski was prejudiced with the *void ab initio* perpetual speech prohibition and criminal conviction for life in contravention of the United States Constitution.

6. Huminski's long-time labeling of Florida as a Police State is not far from reality when criminal prosecutions commence absent the participation of the State, without service and proceed to judgment in the absence of any and all jurisdiction and banish all communication with the entire State of Florida government for life. What notoriously corrupt entity filed the commencement document in State v. Huminski remains a mystery although the forgery was accomplished by Assistant State's Attorney Anthony Kunasek (suicide 2022 related to these issues) and the paper contains no signature of an attorney representing the State of Florida, yet, a criminal conviction stands to this day *per se* prejudicing Huminski preventing him from obtaining a Florida Driver's License and

causing him injury and prejudice. Ronald DeSantis has done his very best in other fora to cover-up the patently illegal and unconstitutional conduct foisted upon Huminski set forth in material herein and this conduct proximately caused the suicide of State prosecutor Anthony Kunasek, Esq. who forged the charging document in *State v. Huminski*. The suicide occurred 30 days after the issue was brought to the attention of the federal courts. Nothing seems to shock the consciousness in a police state pursuing an agenda of silencing dissent.

7. Defendant DeSantis has directed his attorney general to obsessively oppose any attempt by Huminski regarding a collateral attack upon Huminski v. State or any attempt to vindicate his rights related to Huminski v. State in bad faith and with unclean hands on the part of the State of Florida concerning their securing of a lifetime speech prohibition and criminal conviction absent their authoring of a commencement document and absent service in State v. Huminski and with the perpetual governmental speech banishment(s) on the record in that matter. See Exhibit "C".

8. Ronald DeSantis, did direct his Attorney General to use any and all methods to continue the First Amendment prohibitions foisted upon Huminski in State v. Huminski on or about September 1, 2021.

9. The motivations of Ronald DeSantis related to Huminski's set of facts boils down to the silencing of dissent and core protected political expression that is protected at an elevated level. The speech prohibitions foisted upon Huminski are absolute as far as speech directed to the government of the State of Florida as ordered by the County Court in State v. Huminski. The speech prohibitions foisted upon the Plaintiff are similar without the formal issuance of a court order as in Huminski's scenario.

10. Huminski would be happy to withdraw this paper if the State concedes to address the *void ab initio* judgment in State v. Huminski (stipulating to its *void ab initio* status thus abolishing the speech prohibitions) and stops its collection activities related to the criminal conviction and removes the criminal conviction from all records. Civilized settlement is always a preferable route to litigation, but, it requires an admission of wrong-doing which governmental entities rarely succumb to.

## Memorandum of Law

Under Fed. Rule Civ. P. 24(a)(2), upon timely application, anyone shall be permitted to intervene in an action when the applicant shows:

(1) his application to intervene is timely;

(2) he has an interest relating to the property or transaction which is the subject of the action;

(3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and

(4) his interest is represented inadequately by the existing parties to the suit.

Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1302-03 (11th Cir. 2008) (quoting Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989)).

Here, Huminski's request for intervention satisfies the requirements of Rule 24(a)(2) for intervention as of right.

### 1. Huminski's Motion to Intervene is Timely

The Eleventh Circuit has identified several factors relevant to determining whether a request for intervention is timely:

(1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene;

(2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest;

(3) the extent of prejudice to the proposed intervenor if the motion is denied; and

(4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242, 1259 (11th Cir. 2002) (citing Chiles, 865 F.2d at 1213).

This Circuit has recognized that the requirement of timeliness "must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." U.S. Army Corps of Eng'rs, 302 F.3d at 1259 (quoting McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1074 (5th Cir. 1970)).

### 2. Huminski has a Substantial Legal Interest in this Litigation

7

For an applicant's interest in the subject matter of the litigation to be cognizable under Rule 24(a)(2), it must be "direct, substantial and legally protectable." *U.S. Army Corps of Eng'rs*, 302 F.3d at 1249; *see also Chiles*, 865 F.2d at 1212-13 (noting that the focus of a Rule 24 inquiry is "whether the intervenor has a legally protectable interest in the litigation."). The inquiry on this issue "is 'a flexible one, which focuses on the particular facts and circumstances surrounding each [motion for intervention].'" *Chiles*, 865 F.2d at 1214 (quoting United States *v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978)).

Huminski has a legally protectable interest in this litigation as a party impacted as greatly, or more so, by the State of Florida's zeal to silence speech based upon discriminatory or viewpoint based criteria. Huminski's speech, critical of government, is core protected political expression – dissent, afforded the highest level of First Amendment protection.

The Court orders issued in State v. Huminski have the same chilling effect upon Huminski's speech that the unwritten speech prohibitions foisted upon the Plaintiff – silencing of speech that the government finds distasteful.

### 3. The Disposition of the Instant Litigation May Impair Huminski's Ability to Protect his Interest

Huminski's ability to protect his substantial legal interest would be impaired absent intervention. Federal decisions interpreting and applying the provisions of the First Amendment, Due Process and Equal Protection are an important enforcement tool related to the Plaintiffs' and Huminski's claims concerning the discriminatory silencing of speech and content related silencing of speakers, i.e. speech critical of government.

The outcome of this case, including the potential for appeals by existing parties, implicates *stare decisis* concerns that warrant Huminski's intervention. *See* Stone v. First Union Corp., 371 F. 3d 1305, 1309-10 (11th Cir. 2004) (recognizing that potential for a negative *stare decisis* effect "may supply that practical disadvantage which warrants intervention of right") (citing *Chiles*, 865 F.2d at 1214); *see also* United States v. City of Los Angeles, 288 F.3d 391, 400 (9th Cir. 2002) (holding that amicus curiae status may be insufficient to protect the rights of an applicant for intervention "because such status does not allow [the applicant] to raise issues or arguments formally and gives it no right of appeal"). While the existing parties to the litigation will not be prejudiced by Huminski's intervention, Huminski will be prejudiced if its request for intervention is denied. This intervention motion is prior to an appearance by Ronald DeSantis.

### 4. The Existing Parties Do Not Adequately Represent Huminski's Interests

8

The fourth and final element to justify intervention of right is inadequate representation of the proposed intervenor's interest by existing parties to the litigation because the background facts present a slightly different approach to the same legal issue – out of control governmental censorship. This element is satisfied if the proposed intervenor "shows that representation of his interest 'may be' inadequate." *Chiles*, 865 F.2d at 1214 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972)). The burden on the proposed intervenor to show that existing parties cannot adequately represent its interest is "minimal." *Stone*, 371 F.3d 1311; *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259 (citing *Trbovich*, 404 U.S. at 538 n.10). Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action. *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1341 (11th Cir. 1999); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

Huminski's interest is in the enforcement of the First Amendment, Due Process and Equal Protection and to advance the public interest in eliminating speech discrimination and prohibitions in the context of a court order unlike the claims of the Plaintiff that do not involve the speech prohibition being set forth in a Court order that can lead to incarceration pursuant to common law contempt. It appears that the Plaintiff suffers a speech prohibition akin to *Huminski v. Corsones*, 396 F3d 53, 90 (2nd Cir 2005) and the illegal notice against trespass that was central to that case.

In summary, Huminski meets the Rule 24(a) requirements for intervention as of right.

### 5. Huminski Meets the Requirements for Permissive Intervention

Fed. R. Civ. P. 24(b) provides for permissive intervention as an alternative basis for Huminski's intervention in this action. Rule 24(b) states, in relevant part:

(1) On timely motion, the court may permit anyone to intervene who:
(A) is given a conditional right to intervene by a federal statute; or
(B) has a claim or defense that shares with the main action a common question of law or fact.
(2) On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
(A) a statute or executive order administered by the officer or agency; or
(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

The Eleventh Circuit has established a two-part test to guide the Court's discretion as to whether a party may intervene pursuant to Rule 24(b)(2):  the applicant must show that "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common."  *Chiles*, 865 F.2d at 1213 (citing *Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983)).

As discussed above, Huminski's application for intervention in this litigation is timely and Huminski's participation would neither unduly delay the proceedings nor prejudice the adjudication of the rights of the original parties.  Additionally, Huminski's claims against the defendant share common questions of law with Plaintiff's claims, and rest upon common questions of law related to censorship and constitutional issues flowing from content-based censorship.

By avoiding multiple lawsuits and coordinating discovery, intervention will lend efficiency to the proceedings.

Accordingly, Huminski meets the requirements for permissive intervention.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant the Motion to Intervene (i) as a matter of right pursuant to Rule 24(a)(2), Federal Rules of Civil Procedure, or, in the alternative, (ii) permissively pursuant to Rule 24(b) Federal Rules of Civil Procedure.

Dated at Miami, Florida this 1st day of July, 2022.
-/S/-  Scott Huminski

_____

Scott Huminski, pro se
P.O. Box 353820
Palm Coast, FL  32135
(239) 300-6656
S_Huminski@live.com

### Certificate of Service

Copies of this document and any attachment(s) was served upon the parties via the U.S. Mails and/or email and/or the e-filing system in this case.

Dated this 1st day of July, 2022.
-/s/- Scott Huminski



10

_____
Scott Huminski