IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

THOMAS KENNEDY, individually,

    Plaintiff,                             CASE NO.: 1:22-cv-21827-KMW

v.

RON DESANTIS, in his official capacity as
Governor of the State of Florida, MARK
GLASS, in his capacity of Acting Commissioner
of The Florida Department of Law Enforcement,
MIAMI-DADE COUNTY, a political subdivision
of the State of Florida, CITY OF MIAMI, a
municipality of the State of Florida, and JOHN
DOE, unknown Security Guard,

    Defendants
_____/

**DEFENDANT FLORIDA DEPARTMENT OF LAW ENFORCEMENT'S MOTION TO DISMISS, AND IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT AND MOTION TO STRIKE**

COMES NOW the Defendant, Mark Glass in his capacity as Acting Commissioner of the Florida Department of Law Enforcement ("FDLE"), and hereby files this Motion to Dismiss and, in the alternative, Motion for More Definite Statement and Motion to Strike, and states in support as follows:

### JUSTIFICATION FOR THE MOTION

1. This is an action brought under 42 U.S.C. §1983 for alleged violations of the Plaintiff's First, Fifth and Fourteenth Amendment Rights under the U.S. Constitution. The Plaintiff seeks non-specific permanent injunctive relief, declaratory relief and nominal monetary damages from the Defendants.

2. The Plaintiff identifies himself as a political activist who has press credentials and as a journalist writing for various publications including Occupy Democrats and Latino Rebels, among

Thomas Kennedy v. Ron DeSantis et al,
USDC Case No.: 1:22-cv-21827-KMW

others. *See* Compl. at ¶ 12 (D.E. 1). The Plaintiff alleges they attended a press conference held by Governor Ron DeSantis on July 14, 2020. During the press conference, while the Governor was speaking, the Defendant disrupted the proceedings and loudly expressed his viewpoint criticizing the Governor's lack of a plan for COVID was embarrassing and that the Governor was doing a bad job and should resign. While the Plaintiff was speaking, an unknown law enforcement officer forced the plaintiff to leave the press conference. *See* Compl. ¶¶ 21-22.

3. After that incident, the Plaintiff alleges they attempted to attend five other press conferences (i.e., December 16, 2020; February 23, 2021; April 8, 2021; June 14, 2021; and July 7, 2021) where he was denied entry by various law enforcement officers and security guards. *See* Compl. ¶¶ 28-66.

4. The Plaintiff further alleges that FDLE circulated a flyer titled "Situational Awareness" ("the Flyer") featuring the Plaintiff's name and picture, and included allegations of the Plaintiff's "first amendment activities" and a description of the incident at the July 14, 2020 press conference.[1] *See* Compl. at ¶¶ 68-71.

5. Finally, the Plaintiff alleges that FDLE circulated the Flyer to prevent the Plaintiff from attending press conferences held by the Governor, and that use of the Flyer is a violation of the Plaintiff's First, Fifth and Fourteenth Amendment rights. *See* Compl. at ¶ 74.

6. There are three reasons why dismissal is warranted in this matter.

    a. FDLE is an agency of the state of Florida and is entitled to Eleventh Amendment sovereign immunity.

---

[1] The Complaint refers to this date of this incident as July 14, 2020 under the Statement of Facts, but alternates to July 13, 2020 at ¶ 70 in its description of the event on the FDLE Flyer. For the sake of clarity, this Motion assumes the date of the initial press conference to have been July 14, 2020.

2

    b. The Plaintiff alleges facts showing that they were not engaged in exercising a protected right. While the Plaintiff may hold press credentials, the Plaintiff alleges he was prohibited from speaking during the Governor's press conferences. The Plaintiff does not allege he was engaged in legitimate newsgathering activities.

    c. These press conferences were non-public forums, and FDLE's restrictions were reasonable given the Plaintiff's conduct during the July 14, 2020 press conference in which he engaged in activism while the Governor addressed the press. FDLE has among its duties and responsibilities, the task of providing a protection detail to the Governor of Florida and is required to maintain reasonable decorum for the safety of the Governor and his audience.

7. Alternatively, FDLE requests that the Plaintiff should be required to provide a more definite statement as to the facts and claims they are putting forth. The Plaintiff conflates his "first amendment activities" with the freedom of the press such that it is impossible to discern what rights have been compromised. This confusion pervades every count of the Complaint such that FDLE cannot draft a responsive pleading.

8. The Complaint also contains a narrative which is unrelated to the Plaintiff's claims and serves only to prejudice the finder of fact against FDLE. Paragraph 2 of the Complaint presents "just a few of the many examples," with two hyperlinks to news articles, and which are not factually related to this cause of action. FDLE moves in the alternative to strike paragraph 2, along with any other hyperbole and references to unrelated events as scandalous and highly prejudicial to FDLE.

Thomas Kennedy v. Ron DeSantis et al,
USDC Case No.: 1:22-cv-21827-KMW

**MOTION TO DISMISS**

9. The Plaintiff has sued Defendant Mark Glass in his official capacity as the Acting Commissioner of FDLE. *See* Compl. at ¶ 14.

10. Despite the caption and explanation at paragraph 14, there are no allegations in the Complaint as to any specific conduct by Mark Glass in his individual capacity, nor against any individual officers of FDLE. All conduct complained of is attributed generally to FDLE, undisputedly an agency of the state of Florida.

11. The title captions for Counts III through VIII state that these counts are brought against Defendants Governor Ron DeSantis and FDLE.[2] The Complaint refers to FDLE rather than Mr. Glass throughout the Statement of Facts. Again, in each Count the Complaint reinforces the notion that this is a case against the agency of the state, which is immune from such action.

12. The Plaintiff alleges that he appeared at a press conference on July 14, 2020, and "expressed his viewpoint, that the Governor's lack of a plan for COVID was embarrassing and that the Governor was doing a bad job." Compl. at ¶ 25. He was then forced to leave the press conference. Compl. ¶ 27.

13. The Plaintiff then alleges that the FDLE prevented him from attending five other press conferences thereafter. The Plaintiff explains that "law enforcement officers who appeared to be the Governor's security detail" prevented him from entering a press conference on February 23, 2021. Compl. at ¶ 30. On information and belief, the Plaintiff alleges that the law enforcement officer was an officer of FDLE. Compl. at n. 6. The Plaintiff then alleges that FDLE circulated a Flyer (i.e., the "FDLE Flyer") which included information about the Plaintiff, and that due to the

---

[2] Counts I and II are captioned as against "All Defendants."

Thomas Kennedy v. Ron DeSantis et al,
USDC Case No.: 1:22-cv-21827-KMW

Plaintiff's inclusion on the Flyer, he was prevented from attending press conferences. Compl. ¶¶ 32, 36, 50, and 66.

14. These allegations fail as to Mr. Glass, in his official capacity and as an alter-ego for FDLE and the state of Florida, because the Defendant is entitled to Eleventh Amendment sovereign immunity.

### A. Eleventh Amendment Sovereign Immunity

15. The Eleventh Amendment generally prohibits federal courts from exercising subject matter jurisdiction over private party suits filed against a state or state officials. *Tennant v. Florida*, 111 F.Supp.2d 1326, 1330 (N.D. Fla. 2000). The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The United States Supreme Court extended the Eleventh Amendment protections to bar suits against a state in federal court brought by citizens of that state. *Hans v. Louisiana*, 134 U.S. 1, 15-16, 10 S.Ct. 504, 507-08, 33 L.Ed. 842 (1890); *Stanley v. Israel*, 843 F.3d 920, 924 (11th Cir. 2016); *see also Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (the Eleventh Amendment unequivocally bars suits for money damages against a state by the citizens of that state, unless the state waives its sovereign immunity or Congress abrogates said immunity).

16. "The Florida Department of Law Enforcement is an agency of the State of Florida… [and] is thereby covered by Florida's Eleventh Amendment immunity." *Tennant*, 111 F.Supp.2d

at 1330 (affirming summary judgment in favor of FDLE on grounds of Eleventh Amendment sovereign immunity).

17. "The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *see also Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982) (As when the state itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief).

18. As an officer of FDLE, Mr. Glass in his official capacity is entitled to sovereign immunity protections afforded to the state of Florida by the Eleventh Amendment. *See e.g.*, *Hiefner v. Univ. of Tennessee*, 914 F. Supp. 1513, 1516 (E.D. Tenn. 1995) (Holding that the University of Tennessee is an arm and alter-ego of the State, and its employees sued in their official capacities are entitled to sovereign immunity).

19. Florida Statute § 768.28 does not waive Florida's Eleventh Amendment sovereign immunity. *Tennant*, 111 F.Supp.2d at 1330-31; *Fla. Stat. Ann.* § 768.28(18) (West) ("No provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court.")

20. Courts determine whether relief sought nominally against an officer is in fact against the sovereign based on whether the relief would operate against the sovereign. *Pennhurst*, 465

Thomas Kennedy v. Ron DeSantis et al,
USDC Case No.: 1:22-cv-21827-KMW

U.S. at 101, 104 S.Ct. 900. "'[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" *Pennhurst*, 465 U.S. at 101, 104 S.Ct. 900 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963) (per curiam)).

21. The narrow exception created in *Ex Parte Young*, 209 U.S. 123 (1908) does not apply when the state is the real substantial party in interest. *Pennhurst*, 465 U.S.C at 101, 104 S.Ct. 900. Courts examine the effect of the relief sought, *Id.* at 107, 104 S.Ct. 900, and "If such relief would operate against the State, then we forego the fiction of *Ex parte Young* in favor of the bedrock principle of state sovereign immunity." *Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234, 239 (3d Cir. 2020), cert. denied sub nom. *Waterfront Comm'n of New York Harbor v. Murphy*, 142 S. Ct. 561, 211 L. Ed. 2d 350 (2021).

22. The Plaintiff seeks relief which indicates that the state, not Mr. Glass as an officer of FDLE, is the real, substantial party at interest. First, the Plaintiff seeks nominal monetary damages against Mr. Glass in his official capacity. If awarded, such nominal damages would be paid by FDLE, not Mr. Glass. This relief would operate as a sanction against the state of Florida rather than Mr. Glass, as no conduct is alleged on the part of Mr. Glass in the Complaint.

23. The Plaintiff also seeks a preliminary and permanent injunction against the Defendants regarding his inclusion in the FDLE Flyer, inclusion in the Governor's List, and against Defendants' speech restrictions as set forth in the Complaint. While the injunction is directed at FDLE, the fact that the Plaintiff also seeks nominal damages against Mr. Glass in his official capacity reveals that the state of Florida is the real party at interest.

24. However, the injunctive relief sought is not the exercise of protected speech in a public forum. Upon review, the Plaintiff seeks the right to attend Governor DeSantis' press conferences

7

Thomas Kennedy v. Ron DeSantis et al,
USDC Case No.: 1:22-cv-21827-KMW

and express messages they believe the Defendants find unacceptable. *See* Compl. at ¶¶ 83. **This relief would take the form of an order enjoining FDLE from any effort to provide security which would involve this Plaintiff, and to be compelled to permit the Plaintiff to continue his efforts to disrupt the decorum of the proceedings to allow him to shout at the Governor during press conferences.**[3] The relief sought is not an injunction against a protected constitutional right, but the right to *interrupt* a press conference. No such right exists.

### B. Fed. R. Civ. P. 12(b)(6) Failure to State a Claim: No Enforceable Right to Interrupt Press Conferences

25. The Plaintiff does not have an enforceable right to claim press access and then interrupt the Governor's press conferences. The nature of the relief sought would be to grant the Plaintiff a license to encroach on press conferences.

26. "Dismissal of a §1983 claim for lack of an enforceable right amounts to dismissal for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Day v. Apoliona*, 496 F.3d 1027, 1030 (9th Cir. 2007); *see also Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 950–51 (9th Cir.1999); *United States v. Stanley*, 483 U.S. 669, 691 n. 7, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987).

27. In considering a motion to dismiss for failure to state a cause of action, all factual allegations in the complaint must be taken as true and ambiguities and doubts must be resolved in

---

[3] The July 14, 2020 incident referenced in the Complaint at ¶¶ 22-27 was widely reported in the media. A video of the incident can be found here. (https://youtu.be/ymAK_QTe46A) The video reveals the Plaintiff shouting "Shame on you!," "You are an embarrassment!," "You have no plan!," "Resign!," among other criticisms, and interrupting the Governor while the Governor was addressing the press. The video contrasts with the artful retelling of this incident in the Complaint, in which the Plaintiff merely "expressed his viewpoint…that the Governor was doing a bad job," which suggests that the Plaintiff did so in his capacity as a member of the press while asking a question. *See* Compl. ¶ 25. The pleading is so misleading with regards to the July 14, 2020 incident that the Court should take consideration of the video for the purposes of examining the Complaint under Rule 11 Fed. R. Civ. P.

Thomas Kennedy v. Ron DeSantis et al,
USDC Case No.: 1:22-cv-21827-KMW

favor of the pleader. *See Gregg v. Barrett*, 771 F.2d 539, 547 (D.C.Cir.1985) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, "[a] court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish a right to relief based upon those facts." *Id*.

28. The Plaintiff conflates his possession of press credentials (it is unknown as to whether they are authorized by anyone) and the concomitant responsibility to listen, gather information and report on the event which he is attending, with an unlimited license to speak as an admitted "activist" (Complaint ¶ 12) during the Governor's press conferences. **The Plaintiff does not allege they have a right to attend press conferences and interrupt the proceedings.** He only alleges he was prevented from doing so because of the July 14, 2020 incident and the FDLE Flyer.

29. "News gathering is protected by the First Amendment, but such protection is not absolute." *See Garrett v. Estelle*, 556 F.2d 1274, 1277 (5th Cir. 1977) (citing *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972) and *Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information."); *see e.g.*, *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 951 F.Supp. 1224 (M.D. N.C. 1996) (The press is not free to violate laws of general applicability in order to reach its ultimate goals; generally applicable laws do not offend the First Amendment simply because their enforcement against press has incidental effects on its ability to gather and report news); *In re Greensboro News Co.*, 727 F.2d 1320 (4th Cir. 1984) (Rights of the news media are coextensive with and do not exceed those rights of members of the public in general); *Risenhoover v. England*, 936 F.Supp. 392 (W.D. Texas 1996) (Press must abide by laws of general applicability when gathering news, even though such laws may impose incidental burden upon ability to gather or report news).

9

30. First Amendment rights to freedom of speech and of press do not create any per se right of access to government property or activities simply because such access might lead to more thorough or better reporting. *JB Pictures, Inc. v. Dept. of Defense*, 86 F.3d 236 (D.C. 1996).

31. The Plaintiff "is a political activist and has press credentials." Compl. at ¶ 12. The Plaintiff's press credentials do not grant him superior rights of access to interfere with the Governor's press conferences. Members of the press must abide by laws of general applicability.

32. **The Plaintiff does not allege he was prevented from legitimate newsgathering; he only claims to hold press credentials and to have said so during the incidents referenced in the Complaint.** Specifically, the Plaintiff does not allege they were prevented from receiving a press briefing, collecting facts or statements for journalistic purposes, or writing and publishing news. The Plaintiff's participation at the July 14, 2020 press conference was as an *activist,* not as a member of the press, to heckle and criticize the Governor in front of the press. This is not a protected activity under the First Amendment freedom of the press. This would constitute gaining admission to the closed or limited attendance event under false pretenses.

### C. The Press Conferences were Non-Public Forums and the Restriction was Reasonable

33. The Court must consider the character of the location where the expressive activity will occur. Whether the location is a public or nonpublic forum determines the extent to which First Amendment rights may be exercised and the amount of consideration courts must give governmental interests engendering restrictions on those rights. *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Whether the location is a public or nonpublic forum determines the extent to which First Amendment free

speech rights may be exercised and the amount of consideration courts must give governmental interests engendering restrictions on those rights. *Telemundo of Los Angeles v. City of Los Angeles*, 283 F. Supp. 2d 1095 (C.D. Cal. 2003). The crucial question with respect to determining the nature of a place for First Amendment purposes is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Distribution Sys. of Am., Inc. v. Vill. of Old Westbury*, 862 F. Supp. 950, 957 (E.D.N.Y. 1994).

34. A nonpublic forum, in which restrictions on speech need only be reasonable and viewpoint neutral, is public property not traditionally open to public expression or intentionally designated by the government as a place for such expression. *See Make The Road by Walking, Inc. v. Turner*, 378 .3d 133 (2nd Cir. 2004). In a "nonpublic forum," a space that is not by tradition or designation a forum for public communication, the government has much more flexibility to craft rules limiting speech than it has with regard to public forums. *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 201 L. Ed. 2d 201 (2018). Government's decision to restrict access to a nonpublic forum need only be reasonable, for purpose of the First Amendment's guarantee of freedom of expression; it need not be the most reasonable or the only reasonable limitation. *Jacobsen v. Illinois Dep't of Transp.*, 419 F.3d 642, 648 (7th Cir. 2005); *see also International Caucus of Labor Committee v. Maryland Dept. of Transp., Motor Vehicle Admin.*, 745 F.Supp. 323 (D. Md. 1990) (Regulation of speech activity occurring in nonpublic forum is to be examined under standard of reasonableness); *Citizens To End Animal Suffering And Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*, 745 F.Supp. 65 (D. Mass. 1990) (Restrictions on speech in a nonpublic forum need only be reasonable to be valid).

35. The restriction complained of here is that the Plaintiff was denied admittance to the Governor's press conferences *after* he had already abused his "license" to be present at the initial conference referenced by the plaintiff.  He had interrupted a press conference on July 14, 2020 and "expressed his viewpoint, that the Governor's lack of a plan for COVID was embarrassing and that the Governor was doing a bad job." *See* Compl. ¶ 25.

36. The Complaint presents a reasonable restriction on the Plaintiff's speech: it is reasonable for FDLE to prohibit the Plaintiff from interrupting the Governor's press conferences given his conduct at the July 14, 2020 press conference. The press conferences were non-public forums. Members of the press were not invited to interrupt the Governor, express their contrasting views, or interfere with the press conference. The Plaintiff caused a scene during the July 14, 2020 press conference; it would be reasonable for FDLE to deny the Plaintiff access to prevent the Plaintiff from again interfering with subsequent press conferences.

## Conclusion

37. FDLE is a state of Florida agency entitled to Eleventh Amendment sovereign immunity. Furthermore, the facts as pled in the Complaint do not allege a violation of the Plaintiff's First Amendment right, as there are no allegations the Plaintiff was engaged in newsgathering at the press conferences. Finally, given the Plaintiff's conduct at the July 14, 2020 press conference, it would be reasonable to prevent the Plaintiff from attending future press conferences, if for no other reason that the threat to the safety and security of the Governor of Florida was at risk by such conduct. Accordingly, the Complaint must be dismissed.

WHEREFORE the Defendant, FDLE, requests that this Court determine that the Plaintiff has failed to state a cause of action for any First, Fifth or Fourteenth Amendment violations and to

Thomas Kennedy v. Ron DeSantis et al,
USDC Case No.: 1:22-cv-21827-KMW

dismiss the Complaint with prejudice, along with any and all other relief this Court deems necessary and just under the circumstances.

**MOTION FOR MORE DEFINITE STATEMENT**

38. The Plaintiff does not allege in the Complaint which rights under the First Amendment he believes were violated, nor whether he was acting as a member of the press engaged in newsgathering activities or as an individual seeking an opportunity for the purposes of speech. FDLE now moves for more definite statement seeking clarification as to which rights the Plaintiff claims were violated.

39. The Complaint contains a narrative alleging that the Plaintiff attended a July 14, 2020, press conference held by Defendant Gov. DeSantis at Jackson Memorial Hospital. The Plaintiff alleges that he was press working for the Latina Communica. *See* Compl. at ¶ 24.

40. During the press conference, the Plaintiff "expressed his viewpoint, that the Governor's lack of a plan for COVID was embarrassing and that the Governor was doing a bad job." *See* Compl. at ¶ 25. The Plaintiff does not allege whether he was asking a question or seeking comment from the Governor in the capacity of a reporter at the time he voiced his opinion, or whether he was acting as an activist engaged in speech.

41. The Complaint contains a series of allegations setting forth facts that the Plaintiff was denied access to press conferences despite having press credentials. *See* Compl. at ¶¶ 28-66. The Plaintiff does not allege he was attempting to engage in newsgathering as a member of the press or in speech in his capacity as an activist. The Plaintiff omits these facts from the Complaint, leaving FDLE without information necessary to formulate a defense or responsive pleading.

42. Count III of the Complaint alleges procedural due process violations of the Fifth and Fourteenth Amendments. The Plaintiff alleges "they have a right to be free from false

governmental stigmatizations as an individual associated with unlawful activity" resulting in the deprivation of their liberty interest "to attend and participate in first amendment protected activities," although those activities are not specified. *See* Compl. at ¶ 90. Plaintiff also alleges that Defendants' actions singled out the Plaintiff for punishments including "the inability to attend and participate in first amendment activities." Again, the Plaintiff does not specify which activities they were prevented from engaging in. *See* Compl. at ¶¶ 91, 93.

43. Count IV also alleges procedural due process violations of the Fifth and Fourteenth Amendments. The Plaintiff alleges they have been deprived of liberty due to being included in an FDLE flyer and prevented from engaging "in first amendment protected activities on the same terms as others." *See* Compl. at ¶ 99. The Plaintiff makes no allegations as to whether these others are journalists engaged in newsgathering or as individual protesters.

44. Count VI alleges substantive due process violations of the Fifth Amendment. The Plaintiff alleges only that they have constitutionally protected liberty interests in being able to attend and participate in First Amendment activities "and freedom from government-imposed stigma." *See* Compl. at ¶ 112. Again, no explanation is provided as to which activities the plaintiff intended to engage in or which rights under the First Amendment they were allegedly deprived of.

45. The Complaint is vague as to the Plaintiff's entitlement to First Amendment rights. For example, the Plaintiff alleges that he "has been searching for answers from the Governor on his Administration's plan for COVID, and other important policy matters…" *See* Complaint at ¶ 2. Given the narrative provided in the Statement of Facts, this would suggest that the plaintiff's claims arise out of his role as a member of the press and his efforts to attend press briefings. This statement, however, is incongruous with the remainder of the allegations which are suggestive of free speech violations.

Thomas Kennedy v. Ron DeSantis et al,
USDC Case No.: 1:22-cv-21827-KMW

46. FDLE requests that the Plaintiff clarify their allegations and specify which rights under the First Amendment they had intended to exercise: were they acting in their capacity as a member of the press or were they seeking a public forum from which to speak? Clarification of these facts will provide FDLE with sufficient notice of the claims so that FDLE may prepare its defense.

WHEREFORE the Defendant, FDLE, requests that this Court enter an Order directing the plaintiff to file an Amended Complaint identifying the specific rights under the First Amendment for which the plaintiff seeks redress, along with any and all other relief this Court deems necessary and just under the circumstances.

**MOTION TO STRIKE**

47. The Plaintiff is an individual and no effort is made in this action to claim status as a representative of a group or class, nor should there be any such consideration.

48. "A court may strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699 (S.D. Fla. 2013); *see also* Fed. R. Civ. P. 12(f). A motion to strike is intended to clean up pleadings, removing irrelevant or otherwise confusing materials. *Id*.

49. The Complaint, paragraph 2, raises allegations that are unrelated to the Plaintiff's cause of action, are impertinent to the relief sought and serve only as an effort to enflame or to prejudice the finder of fact against the Defendants. Paragraph 2 reads as follows:

> The Plaintiff has been searching for answers from the Governor on his Administration's plan for COVID, and other important policy matters, and has repeatedly been prevented from attending events and exercising his first amendment rights. Recently, the Governor has taken actions against others who have tried to exercise their

15

Thomas Kennedy v. Ron DeSantis et al,
USDC Case No.: 1:22-cv-21827-KMW

> freedom of speech. On January 4, 2022, the Governor had Duval County, Florida activist Ben Frazier removed the Florida Department of Health building in Duval County ahead of a news conference being held by the governor. On January 4, 2022, Governor DeSantis tried to silence CNN reporter Rosa Flores from asking him questions about the Governor's response to COVID. These are just a few of the many examples that exist of the Governor and his Administration's treatment of Floridians trying to ask questions and receive answers on one of the biggest health dangers to the State in more than a century.

Compl. at ¶ 2.

50. These allegations involving unrelated activists and journalists are scandalous at best and wholly unrelated to the action *sub judice*. Paragraph 2 should be stricken from the Complaint as it is immaterial, irrelevant and scandalous and serves no legitimate purpose other than to prejudice FDLE in the defense of this action.

WHEREFORE the Defendant, FDLE, requests that this Court enter an Order striking paragraph 2 from the Complaint, along with any and all other relief this Court deems necessary and just under the circumstances.

*(Certification of Service appears on the following page.)*

Thomas Kennedy v. Ron DeSantis et al,
USDC Case No.: 1:22-cv-21827-KMW

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2022, I electronically served upon Khurrum Wahid, Esq., counsel for Plaintiff, at khurrum@wvmlawfirm.com; khurrum@wvglegal.com;  and Nicholas J.P. Meros, Esq., counsel for Defendant Ron DeSantis, at Nicholas.meros@eog.myflorida.com;

        Respectfully submitted by:

        James M. Fishman, Esquire
        Quintairos, Prieto, Wood & Boyer, P.A.
        Counsel for Alberto Perez
        9300 S. Dadeland Blvd.,
        Fourth Floor
        Miami, Florida  33156
        Tel: 305.670.1101 Fax: 305.670.1161
        Eservice:
        jfishman.pleadings@qpwblaw.com
        Email: james.fishman@qpwblaw.com
        patricia.huerta@qpwblaw.com

        By: */s/ James M. Fishman, Esq.*
            James M. Fishman, Esq.
            F.B.N. 291201
            Matthew J. Allen, Esq.
            F.B.N. 88524