UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

THOMAS KENNEDY,

     Plaintiffs,

v.

                                  Case No. 1:22-cv-21827

RON DESANTIS, in his official capacity
as Governor of the State of Florida, et al.

     Defendants.

_____/

**GOVERNOR DESANTIS' MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

     Defendants Ron DeSantis, in his official capacity as Governor of the State of Florida ("Governor DeSantis"), pursuant to Federal Rules of Civil Procedure 12(B)(1) and 12((b)(6), files this Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law ("Motion"). In support of this Motion, Governor DeSantis states:[1]

**INTRODUCTION**

     Plaintiff Thomas Kennedy is a political activist and journalist. Mr. Kennedy disagrees with the Governor's policy positions and attends the Governor's events to make his feelings known. During one such event on July 14, 2020, Plaintiff loudly interrupted the Governor's presentation to say – in effect – that "the Governor's lack of a plan for COVID was embarrassing and that the Governor was doing a bad job." Complaint ("Compl.") at 5 ¶ 25.[2] In response, law enforcement removed Plaintiff from the event. *Id.* at 6 ¶ 27.[3] Plaintiff,

---

[1] This Motion originally exceeded Rule 7.1(c)(2)'s page limit. Accordingly, Governor DeSantis filed a Motion for Leave to Exceed Page Limits. ECF No. 32. But in the event the Court could not rule on the Motion before Governor DeSantis' response deadline due to his late filing, and in an abundance of caution, counsel shortened this Motion to ensure it complied with the Local Rules. Accordingly, Governor DeSantis asks this Court to disregard his Motion for Leave to Exceed Page Limits.

[2] Governor DeSantis takes these facts from Plaintiff's Complaint, Doc. 1, whose allegations are taken as true for purposes of this Motion. Governor DeSantis does not otherwise admit their truth.

[3] Plaintiff does not dispute that law enforcement removed him from the event because of his outburst. Compl. at 5-6, ¶¶ 25-27.

however, claims that Defendants[4] denied him entry to four subsequent events Governor DeSantis held between December 2020 and July 2021. *Id.* at 6-10, ¶¶ 28-50 & 58-66.[5] And he alleges Defendants removed him from a July 14, 2021, private event at The Shul in Surfside, Florida, after he interrupted Governor DeSantis' speech to ask him "why are you banning teachers from teaching things you don't like?" *Id.* at 9 ¶ 53.

Specifically, Plaintiff insists that Defendants denied him entry to, or removed him from, these five events because his name appears on a "Governor's No Entry List" ("Governor's List") and a Florida Department of Law Enforcement (FDLE) "Situation Awareness Flyer" ("FDLE Flyer") (collectively, "the Lists"). *Id.* at 6, ¶ 32; 7, ¶ 36; 9, ¶ 49; 10, ¶ 57; 11, ¶ 66.[6] But Plaintiff acknowledges that the FDLE Flyer, dated July 14, 2020 – the day of the first alleged incident – clearly states that he was escorted out of that event for "disrupt[ing] the conference by directing verbal outburst towards Governor DeSantis." *Id.* at 11, ¶ 70. And Plaintiff does not provide any information about the Governor's List – only that it allegedly exists.[7] Nor does he attach either to the Complaint.

Notwithstanding Plaintiff's penchant for disrupting events – which his account of the FDLE Flyer confirms – Plaintiff claims that Defendants removed him from the July 14, 2020 and June 14, 2021 events, and denied him access to the other four, "on the basis of the content and viewpoint of [his] political activities and/or journalism activities . . . ." *Id.* at 11, ¶ 74.[8] And he argues each action violated his First, Fifth, and Fourteenth Amendment rights.

Specifically, the Complaint alleges that (a) removing Plaintiff from, and denying him entry to the Governor's events, and adding his name to the Lists, violated the First

---

[4] This Motion uses the term "Defendants" because the Complaint alleges that different law enforcement officers denied him entry to each event. Indeed, Plaintiff claims that a security guard denied him entry to the December 16, 2020, event; law enforcement officers "who appeared to be Governor's security detail" denied him entry to the February 23, 2021, event; a Miami-Dade County police officer denied him entry to the April 8, 2021, event; and a City of Miami police officer denied him entry to the July 7, 2021, event. Compl. at 6, ¶ 30; 7, ¶ 35; 8, ¶¶ 41-49; and 11, ¶ 62. And Plaintiff alleges that "unknown security officers" removed him from the July 14, 2020 and June 14, 2021 events. Compl. at 6, ¶ 26; 10, ¶ 54.

[5] Those events occurred on December 16, 2020, at Pompano Beach senior center (Compl. at 7, ¶¶33-36); February 23, 2021, at a Hialeah convenience store (Compl. at 6, ¶ 28-32); April 8, 2021, at the Port of Miami (Compl. at 7-9, ¶¶ 37-50); and July 7, 2021, at a Miami National guard base and armory (Compl. at 10, ¶¶ 58-66).

[6] Plaintiff, however, acknowledges that security removed him from the June 14, 2021, event at The Shul immediately after his disruptive outburst. Compl. at 9-10, ¶¶ 53-57.

[7] The Complaint also mentions an "Associate List" one time but does not offer any additional information. Compl. at 11, ¶ 65.

[8] Plaintiff also claims that Defendants "unlawfully and arbitrarily detain[ed] him," but none of his claims mention or address that unfounded allegation. Compl. at 3, ¶ 3.

Amendment (Count 1); (b) denying Plaintiff entry to the events violated the Equal Protection Clause of the Fourteenth Amendment (Count 2); (c) adding Plaintiff's name to the Lists violated procedural due process (Counts 3 and 4) and substantive due process (Counts 5 and 6) under the Fifth Amendment; (d) and the Lists' criteria for adding names is unconstitutionally vague under the Fifth Amendment (Counts 7 and 8). Plaintiff seeks retrospective declaratory relief, prospective injunctive relief, and nominal damages and attorney's fees under Section § 1983.[9]

## LEGAL STANDARD

Courts considering a motion to dismiss must accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). But complaints must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## ARGUMENT

The Court should dismiss Plaintiff's Complaint for three reasons. First, Plaintiff does not have standing to bring this action against Governor DeSantis or seek injunctive relief. Second, the Eleventh Amendment bars this action against Plaintiff and his remaining requests for retrospective relief. Third, the Complaint fails to state a claim for relief on all eight counts.

**I.  Plaintiff does not have standing to bring this action against Governor DeSantis**

To have standing, plaintiffs must allege a (1) cognizable "injury in fact" (2) caused by the defendant and (3) redressable, at least partially, through a favorable decision for the plaintiff and against the defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff, as the party invoking federal jurisdiction, "bears the burden of establishing these elements by alleging facts that 'plausibly' demonstrate each element." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) (citing *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020)). Courts reviewing a motion to dismiss for

---

[9] The Complaint lists the specific relief sought in its "Prayer for Relief" but does not connect those requests to the individual counts.

lack of standing "must evaluate standing based on the facts alleged in the complaint, and . . . may not 'speculate concerning the existence of standing' or 'piece together support for the plaintiff.'" *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (quoting *Cone Corp. v. Florida Dept. of Transp.,* 921 F.2d 1190, 1210 (11th Cir. 1991) (citation omitted)).

Plaintiff does not meet his burden for two reasons. First, he does not plausibly allege that Governor DeSantis caused his alleged injuries. Second, he does not have standing to seek injunctive relief because he does not allege a real or immediate threat of future injury.

1. *Plaintiff does not establish causation*

The second element of standing, known as "causation" or "traceability," requires a "causal connection between the injury and the conduct complained of [such that] the injury is 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42 (1976)). In other words, when pleading his case, Plaintiff must make general factual allegations "demonstrat[ing] a causal connection between the asserted injury-in-fact and the challenged action of the defendant." *Shotz*, 256 F.3d at 1081 (citing *Lujan*, 504 U.S. at 560).

Plaintiff alleges that Defendants injured him by including his name on the Governor's List and the FDLE Flyer denying him access to, or removing him from, five of the six events because his name appeared on the Lists.[10] Thus, to demonstrate causation, Plaintiff must plausibly allege that Governor DeSantis, or the Executive Office of the Governor, added his name to the Lists and instructed law enforcement officers to deny Plaintiff access to, or remove him from, those events.[11] Plaintiff does neither.

Instead, he alleges that (a) City of Miami, Miami Dade County, and National Guard officers; (Compl. at 8, ¶ 41-42; 10-11, ¶¶ 60-64); (b) "unknown law enforcement officer[s]" (Compl. at 6, ¶¶ 26-27; 10, ¶¶ 54-57); or (c) "law enforcement officers who appeared to be the Governor's security detail" (Compl. at 6, ¶ 30) denied him entry to, or removed him from, those events. Likewise, he claims that "Governor DeSantis and the other Defendants . . .

---

[10] Recall that Plaintiff does not allege Defendants removed him from the first event because his name appeared on the Lists. *See* n.3, *supra*.

[11] He does not allege who created the FDLE flyer, but strongly suggests FDLE is responsible. *See* Compl. at 11-12, ¶ 70 ("The Flyer says 'Florida Department of Law Enforcement' with the FDLE logos. It then says 'Situational Awareness' with a red subtitle of 'FOR FDLE INTERNAL USE ONLY'".) He says nothing about who created the alleged Governor's List or its contents.

added him to [the] 'No-Entry' List[s] based on the content or viewpoint of Plaintiff's speech." Compl. at 13, ¶ 80; 2, ¶ 1.[12]

But these allegations demonstrate that Plaintiff does not know which Defendant, if any, is responsible for his alleged injuries. *See* Compl. at 10, n.8 ("Upon information and belief, Plaintiff **believes** that the unknown security guard was a private security guard acting under orders and in conjunction with the Governor's security detail."); at 3, ¶ 3 ("**Defendants** have taken actions that operate as a prior restraint on Plaintiffs' speech, [including] . . . adding Plaintiff's name to the Governor's No Entry List [ ] and Florida Department of Law Enforcement [ ] flyer without due process of law.") (emphasis added).

And Plaintiff does not plead facts – much less plausible ones – supporting his sweeping claims. Compl. at 9, ¶ 49 ("[I]t is clear that the directive [to deny him entry or remove him] w[ere] given to the Officer[s] from either the Governor's Office or FDLE."). In fact, Plaintiff acknowledges that he must take discovery to determine which officers took which actions and who gave them their orders. *See* Compl. at 6, n.5 ("The Plaintiff intends to confirm the identity and agency of the unknown law enforcement office through the discovery process."); n.6 ("The Plaintiff intends to confirm the identity and agency of the security detail through the discovery process.").

As a result, Plaintiff's threadbare allegations are entirely conclusory and "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007)). And conclusory allegations cannot demonstrate traceability. *See Tsao*, 986 F.3d at 1338 (making clear that party invoking federal jurisdiction must "alleg[e] facts that plausibly demonstrate each element" of standing and "mere conclusory statements do not suffice") (citing *Iqbal*, 556 U.S. at 678); *Warren Tech., Inc. v. UL LLC*, No. 1:18-CV-21019-UU,

---

[12] Plaintiff does not appear to trace his alleged injuries to Governor DeSantis by arguing that FDLE's actions are imputed vicariously to Governor DeSantis by virtue of his supervisory authority over FDLE as the state's Chief Executive. But to the extent he does, he is wrong. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) ("It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.") *see also Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014) (supervisory officials are not liable under § 1983 for the actions of their subordinates based on *respondeat superior* or vicarious liability); *Zuniga v. Jones*, No. 3:18cv-92-J-32PDB, 2018 WL 2938449, at *2 (M.D. Fla. 2018) (dismissing case against Governor where § 1983 action depended on *respondeat superior* liability and Plaintiff made no allegations that the Governor personally participated in the alleged violations or implemented an official policy that resulted in a constitutional violation) (emphasis original).

2018 WL 10550930, at *4 (S.D. Fla. Oct. 31, 2018), aff'd, 962 F.3d 1324 (11th Cir. 2020) (holding plaintiff "failed to demonstrate that any injury was fairly traceable to Defendants' conduct because the only allegation connecting Defendants' misrepresentations and [Plaintiff]'s lost sales was a conclusory statement . . . ."); *Nature's Earth Prod., Inc. v. Planetwise Prod., Inc.*, No. 09-80770-CIV, 2010 WL 4384218, at *2 (S.D. Fla. Oct. 28, 2010) ("Defendant's only allegation of an injury is [a] conclusory statement . . . This is not enough to satisfy the . . . constitutional standing inquiry, i.e., injury fairly traceable to Plaintiff's conduct."). Accordingly, Plaintiff does not have standing. *W. Flagler Assocs. Ltd. v. DeSantis*, 568 F. Supp. 3d 1277 (N.D. Fla. 2021) (dismissing action for lack of standing because plaintiffs "have not shown traceability as to the Governor").

2. *Plaintiff does not have standing to seek injunctive relief*

But even if Plaintiff alleged that Governor DeSantis or his Executive Office created the Lists and directed the officers to deny him entry to, and remove him from, the six events, he does not have standing to seek an injunction regarding either alleged injury.

Article III's "injury-in-fact" requirement demands an additional showing when plaintiffs seek injunctive relief. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983) (emphasis in original)). Thus, in addition to a past injury, Plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Marod Supermarkets, Inc.*, 733 F.3d at 1329 (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.,* 247 F.3d 1262, 1284 (11th Cir. 2001)).

Here, Plaintiffs ask this Court to (a) enjoin Defendants from denying Plaintiff entry into, or removing him from, the Governor's future events and (b) require Defendants to remove Plaintiff from, or no longer include him on, the Lists. Compl. at 20; Prayer for Relief, ¶ D-F. Thus, to have standing, Plaintiff must show "a real and immediate threat" that Governor DeSantis will again deny Plaintiff access to his events or maintain his name on the Lists. *See Marod Supermarkets, Inc.*, 733 F.3d at 1329. But he does not allege the possibility – much less a real or immediate threat – of Governor DeSantis doing either. Indeed, he does

not even allege that he plans to attend future events, much less that Governor DeSantis will deny him entry to, or remove him from, any event he attends.

Rather, Plaintiff merely claims that Governor DeSantis and FDLE "have violated Plaintiff's rights without affording him due process of law and will continue to do so into the future if Plaintiff is not afforded the relief demanded below" and "violated Plaintiff's constitutional rights and have caused an injury that is not justified by any legitimate government interest and that will continue to subject him to further harm absent the relief requested below." Compl. at 15, ¶ 94; 17, ¶¶ 104 & 109; 18, ¶ 114. Plaintiff provides no further explanation or evidence to support either claim. Thus, they are entirely conclusory and "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554–55); *see also Tsao*, 986 F.3d at 1338. And without plausibly alleging real and immediate future injury, Plaintiff does not have standing to seek an injunction. *See, e.g., Shotz*, 256 F.3d at 1082 ("Here, the plaintiffs do not allege a real and immediate threat of future discrimination . . . Accordingly, the plaintiffs do not have Article III standing [to seek an injunction].").

As demonstrated above, Plaintiff does not trace his alleged injuries back to Governor DeSantis. Even if he did, he plainly does not have standing to seek an injunction. Thus, assuming *arguendo* that the Court finds Plaintiff has standing[13], the Complaint's remaining requests for relief seek a declaration that Defendants' prior actions were unconstitutional and an order awarding Plaintiff compensatory damages and attorney's fees. But, for the reasons discussed in the next section, the Eleventh Amendment bars both requests for relief and the action itself.

## II.   The Eleventh Amendment bars this action

Not only does Plaintiff lack standing to bring this action, but the Eleventh Amendment bars it for two reasons. [14] First, Plaintiff's claims for retrospective relief do not meet the *Ex*

---

[13] If this assumption is not true, and the Court finds Plaintiff does not have standing, then the Court must dismiss this action, rendering the remaining arguments moot. Thus, Governor DeSantis makes this assumption solely for the sake of argument so that he may present his other dispositive arguments.

[14] Eleventh Amendment immunity and standing are both threshold issues that courts address up front. *See, e.g., Ross v. Jefferson Cty. Dep't. of Health*, 701 F.3d 655, 659 (11th Cir. 2012) ("Because immunity from suit under the Eleventh Amendment is in the nature of a jurisdictional bar, it should be decided at an early stage to protect the sovereignty of states and state agents by sparing them the indignity of being haled into federal court by private litigants.") (quoting *Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996) (internal quotation marks omitted)); *United States v. Nine Hundred Sixty Thousand Dollars in U.S. Currency*, 307 F. App'x 251, 255 (11th Cir. 2006) ("Standing is the threshold question in every federal case, determining the power of the court to entertain the suit.") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (internal quotation mark

*parte Young* exception. Second, Governor DeSantis is not a proper defendant under *Ex parte Young*.

    1.  <u>*The Eleventh Amendment bars Plaintiff's requests for retrospective relief in all counts*</u>

       The Eleventh Amendment forbids suits against states in federal court unless the state waives its sovereign immunity or Congress abrogates that immunity. *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000)). That includes actions against a state official in his or her official capacity. *See Nat'l Ass'n of the Deaf v. Fla.*, 980 F.3d 763, 770 (11th Cir. 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).

       Plaintiff does not allege that Florida has waived its sovereign immunity to suit in federal courts in §1983 actions, or that Congress has abrogated that immunity. *See Fin. Healthcare Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cnty.*, 488 F. Supp. 2d 1231, 1235–36 (S.D. Fla. 2007) ("In Florida, sovereign immunity is the general rule, not the exception.") (citing *Pan–Am Tobacco v. Dept. of Corrections*, 471 So. 2d 4, 5 (Fla. 1984)). Indeed, Florida has not waived its sovereign immunity under § 1983. *Gamble v. Fla. Dep't of Health & Rehab. Servs.,* 779 F.2d 1509, 1515 (11th Cir. 1986); *see also Gould v. Fla. Atl. Univ. Bd. of Trustees*, No. 10-81210-CIV, 2011 WL 13227893, at *3 (S.D. Fla. June 14, 2011) ("Florida has not waived its § 1983 immunity.").[15] Nor has Congress abrogated that immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal–state balance

---

omitted)). But courts need not address one before the other. Governor DeSantis addresses the concepts in this order for flow and readability. And despite their similarities, they are separate issues that both justify dismissal. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1256 (11th Cir. 2020) ("Article III standing and the proper defendant under *Ex parte Young* are "[s]eparate[ ]" issues[.]" (quoting *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc)). Moreover, as discussed in the text below, regardless of the order in which Governor DeSantis addresses these issues, both require the Court to dismiss this action.

[15] Florida waived its sovereign immunity to traditional tort actions in state court under section 768.28(1), Fla. Stat., but in doing so made clear that its waiver does not waive any other sovereign immunity. *See* § 768.28(1), Fla. Stat. ("In accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act."); *accord* Fla. Stat. § 768.28(18) ("No provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court.").

in that respect was made clear in our decision in *Quern*.") (citing *Quern v. Jordan*, 440 U.S. 332, 350 (1979)).

The *Ex parte Young* case, however, created an exception to Eleventh Amendment immunity. 209 U.S. 123, 168 (1908). That exception permits suits against state officials in their official capacities by plaintiffs "seeking prospective equitable relief to end continuing violations of federal law." *Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1255 (11th Cir. 2021) *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) (citing *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999)). But it is inapplicable when a plaintiff seeks "to adjudicate the legality of past conduct." *Summit Med. Assocs., P.C.*, 180 F.3d at 1337. As a result, the Eleventh Amendment bars suits "against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief." *Id.*, at 1336 (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

As discussed in the previous section, Plaintiff does not have standing to request an injunction removing his name from the Lists or preventing Defendants from denying him access to the Governor's events because he does not allege – much less demonstrate – a real and immediate threat of injury from being on the Lists or being denied access to events. *See Wooden*, 247 F.3d at 1283 ("[T]o have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future."). The Complaint's remaining requests ask this Court to (a) declare that Defendants placing Plaintiff's name on the Lists, and removing him from, or denying him entry to, the Governor's events, was unconstitutional; (b) award him nominal compensatory damages; and (c) award him reasonable attorney's fees and costs.

The Eleventh Amendment plainly applies to these requests because Plaintiff alleges them against a state official in his official capacity. *See, e.g., Lane v. Central Alabama Community College*, 772 F.3d 1349, 1351 (11th Cir. 2014) ("Generally speaking, the Eleventh Amendment bars civil actions against state officials in their official capacity when the state is the real, substantial party in interest.") (citation and internal quotation marks omitted). And each request is retrospective because it concerns past conduct. *See Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219-20 (11th Cir. 2000) (describing plaintiff's retrospective relief as "reimbursement for past unlawful conduct"). As

9

a result, the requests do not fall within the *Ex parte Young* exception to sovereign immunity. *See, e.g.*, *Nicholl v. Att'y Gen. Ga.*, 769 F. App'x 813, 815 (11th Cir. 2019) (per curiam) (finding *Ex parte Young* exception inapplicable where plaintiff sought a declaration that defendant violated federal law by giving plaintiff a particular grade in a completed course)*; Florida Ass'n of Rehab. Facilities*, *Inc.*, 225 F.3d at 1219-20 (holding *Ex parte Young* doctrine applies only when "a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past").

Accordingly, the Eleventh Amendment applies and bars these claims. *See, e.g.*, *Fla. Ass'n of Rehab. Facilities, Inc.*, 225 F.3d at 1220 (holding Eleventh Amendment barred "payment of state funds to remedy unlawful conduct prior to the date of the final judgment"); *McLaughlin v. Fla. Int'l Univ. Bd. of Trustees*, 533 F. Supp. 3d 1149, 1169–70 (S.D. Fla. 2021), *aff'd*, No. 21-11453, 2022 WL 1203080 (11th Cir. Apr. 22, 2022) (dismissing claims for retrospective declaratory judgment, damages, and attorneys' fees against public university's administration for violating Eleventh Amendment sovereign immunity). And this Court must dismiss them because it does not have jurisdiction to entertain barred claims. *See, e.g., McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) ("[F]ederal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment.") (citation omitted).

2. <u>*Governor DeSantis is not a proper party under* Ex parte Young</u>

Not only does the *Ex parte Young* doctrine prohibit Plaintiff's retrospective relief, it bars the action against Governor DeSantis because he had no connection to Plaintiff's alleged injury. Thus, regardless of the relief Plaintiff seeks, the Court must dismiss Governor DeSantis from this action.

The *Ex parte Young* exception permits an action against a state official in his official capacity only if the official, "by virtue of his office, ha[s] some connection with the unconstitutional act or conduct complained of." *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988) (internal quotation omitted). The official need not have personally acted, but must be "responsible for the challenged action." *Luckey*, 860 F.2d at 1015; *see also Gale Force Roofing & Restoration, LLC v. Brown*, 548 F. Supp. 3d 1143, 1157 (N.D. Fla. 2021) ("[A] state official needs to have 'some connection' with the underlying claim in the lawsuit.") (quoting *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) ("To be a proper defendant under *Ex parte*

10

*Young*—and so avoid an Eleventh Amendment bar to suit—a state official need only have "some connection" with the enforcement of the challenged law.")).[16] That is not the case here.

Plaintiff claims that Defendants violated his constitutional rights by adding his name to the Lists and denying him entry to, or removing him from, six events. But he does not allege, much less establish, that Governor DeSantis or his Executive Office is responsible for either. Indeed, he simply alleges that the officers who removed him from some of the events "appeared to be the Governor's security detail," or were "acting under orders and in conjunction with the Governor's security detail." Compl. at 6, ¶ 30; 10, n.8. And his only allegation concerning who added his name to the Lists was that "Defendant Governor DeSantis and/or FDLE's true purpose for adding Plaintiff or having Plaintiff added to the Governor's List and the Flyer was to silence the viewpoint expressed by Plaintiff's speech." *Id.* at 13, ¶ 80. Moreover, he offers no facts to support any of these claims. This Court need not accept Plaintiff's threadbare conclusory allegations as true and should give them no weight. *See, e.g., Iqbal,* 556 U.S. at 681. But even if it did, Plaintiff's allegations would still not plausibly establish that Governor DeSantis is responsible for the challenged actions.

In addition, neither Governor DeSantis' general executive authority, nor his supervisory authority over his executive agencies, makes him responsible for FDLE's actions, much less for those caused by municipal governments or unknown parties. *See Women's Emergency Network v. Bush,* 323 F.3d 937, 949 (11th Cir. 2003) ("A governor's 'general executive power' is not a basis for jurisdiction in most circumstances.") (first proposition); *Keith,* 749 F.3d at 1047-48 (holding supervisory officials are not liable under § 1983 for the actions of their subordinates based on *respondeat superior* or vicarious liability) (second proposition); *see also Gale Force Roofing & Restoration, LLC,* 548 F. Supp. 3d at 1157 ("[S]upervisory authority, in and of itself, is insufficient to render state-level Florida authorities' proper defendants" under *Ex parte Young*) (citing *Jacobson,* 974 F.3d at 1256).

Accordingly, Governor DeSantis is not a proper defendant in this action under *Ex parte Young* and must be dismissed. *See, e.g., Namphy v. DeSantis,* 493 F. Supp. 3d 1130, 1137 (N.D.

---

[16] When a plaintiff sues a state official challenging the constitutionality of a statute, the *Ex parte Young* doctrine requires that "the state officer has some responsibility to enforce the statute or provision at issue." *Summit,* 180 F.3d at 1341. Given that Plaintiff challenges the constitutionality of Defendants' conduct, not the constitutionality of a statute, he need not show that Governor DeSantis enforces a statute. *See Jacobson,* 974 F.3d at 1236. Instead, Plaintiff must show that Governor DeSantis was "responsible for the challenged action." *Luckey,* 860 F.2d at 1015.

Fla. 2020) (finding Governor was not a proper party and dismissing him under *Ex parte Young* because he did not have the authority to extend a voter registration deadline and thus "d[id] not have more than 'some connection' with the underlying claim"); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1255 (N.D. Fla. 2016) (same); *cf. Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988) (holding that Governor sufficiently responsible for the "provision of indigent criminal defense services" was a proper defendant because he was responsible for law enforcement, had residual power to commence criminal prosecutions, and had final authority to direct the Attorney General to prosecute on behalf of the state).

### III.   The Complaint fails to state a claim for relief in all counts

Last, even if this Court finds that Plaintiff has standing and the Eleventh Amendment does not bar this action, it should dismiss the Complaint for failure to state a claim for relief in all counts.

#### 1.   *Count 1 does not state a claim for First Amendment retaliation*

Count I alleges that Defendants added Plaintiff's name to the Lists based on his previous statements and prevented him from entering, or removed him from, five of six events because his name appeared on those Lists. Compl. at 13, ¶ 78-80.[17] Thus, by extension, Plaintiff claims that each denial or removal restricted his speech based on its content and his viewpoint. *Id.*

To prevail on a First Amendment retaliation claim, Plaintiff "must establish that (1) he engaged in constitutionally protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013). Plaintiff does not establish the first and third prongs.

As a threshold issue, Count I fails to state a First Amendment claim against Governor DeSantis for the April 8, 2021 and July 7, 2021 events on government property because Plaintiff does not allege Governor DeSantis or his Executive Office denied him entry to those

---

[17] *See* n.10, *supra.*

events.[18] Instead, Plaintiff claims that Miami-Dade County police officers and a City of Miami police officer, respectively, denied him access to those events.[19]

In addition, Count I does not state a retaliation claim against Governor DeSantis for denying him access to or removing him from the other four events – each on private property – because he did not have a right to attend those events. "The First and Fourteenth Amendments bar government from interfering in any way with a free press." *Pell v. Procunier*, 417 U.S. 817, 834 (1974). But the "right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965). Indeed, "the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes,* 408 U.S. 665, 684 (1972); *Pell*, 417 U.S. at 834 ("[T]he Constitution does not, however, require government to accord the press special access to information not shared by members of the public generally.").

Plaintiff does not allege that the four events held on private property were open to the public, or even to the press.[20] Nor does he allege that he was invited to the events. In addition, his claim that he had press credentials for each event is not facially plausible because the Executive Office of the Governor does not issue credentials or passes for events.[21] *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("A facially plausible claim

---

[18] The same can be said for the June 2021 and February 2021 events. Plaintiff alleges in a footnote for both that "[u]pon information and belief, Plaintiff believes that the unknown law enforcement officer was from the FDLE detail assigned to the Governor." Compl. at 6 n.5 & 6. Thus, Plaintiff claims that FDLE, not the Governor, denied him access to, or removed him from, those events. Governor DeSantis raises this point in a footnote, rather than in the text, to maintain the analytical dichotomy between events on government vs. private property. But the analysis applies the same to all four events – and Count I fails to state a claim against Governor DeSantis for each of them.

[19] Plaintiff alleges that "it is clear that [the directive for the April 8, 2021 event] was given to the Officer from either the Governor's Office or FDLE." Compl. at 9, ¶ 49. This allegation, along with those in n. 18 are entirely conclusory and offer no facts demonstrating the claim is plausible. For both reasons, these allegations are not entitled to the assumption of truth and do not state a claim for relief. *Iqbal*, 556 U.S. at 678 & 681 (citing *Twombly*, 550 U.S. at 554-55 & 570).

[20] Plaintiff does cite the FDLE List, which allegedly states that the July 14, 2020 event "was closed to the public and open to the press." Compl. at 11-12, ¶ 70. But again, Plaintiff does not attach the FDLE Flyer to the Complaint, nor does he provide any other facts supporting this claim. But even if this fact were true, it would not mean that Count 1 states a retaliation claim for this event because Plaintiff does not allege that Defendants removed him from this first event because of the content of his message or because his name appeared on the FDLE Flyer or the Governor's List. Compl. at 5-6, ¶¶ 22-27. Indeed, Plaintiff could not claim he was removed because of the FDLE Flyer because his own description of the document demonstrates that it was not created until after the July 2020 event. Thus, the Complaint does not allege that he had a right to be at any of the five events from which he alleges Defendants denied or removed him because his name appeared on the Lists.

[21] *See* Compl. at 3, ¶ 12; 6 ¶¶ 27 & 29; 7 ¶ 34 & 38; 9 ¶ 52; 10 ¶ 59.

must allege facts that are more than merely possible.") (citing *Iqbal*, 556 U.S. at 678). And government officials may hold exclusive events without violating the First Amendment. *See The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 418-19 (4th Cir. 2006) (holding that officials "giving preferential access to some reporters and refusing to give access to or answer the questions of other reporters" does not violate the First Amendment"); *Sherrill v. Knight*, 569 F.2d 124, 129 (D.C. Cir. 1977) ("It would certainly be unreasonable to suggest that because the President allows interviews with some bona fide journalists, he must give this opportunity to all.").

Thus, Plaintiff does not establish that he had a right to attend the four events on private property. Without a right attend, Plaintiff could not have been engaging in protected conduct when he was denied access or removed from the events. And without establishing that he was exercising his First Amendment rights, Plaintiff does not state a First Amendment retaliation claim.

But even if this Court finds Plaintiff was exercising his First Amendment rights during the events, he still does not state a retaliation claim because he does not demonstrate a causal connection between his protected conduct and the alleged retaliation. In other words, he does not allege – much less establish – that Defendants "took action against him in retaliation for his exercise of First Amendment rights." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–284 (1977). Plaintiff alleges that Defendants prevented him from attending five of the six events – all except the July 2020 event – "due to his name being on the 'Governor's List' and FDLE Flyer." Compl. at 6, ¶ 32; *see also* Compl. at 7, ¶ 36; 9, ¶ 50; 10, ¶ 57; and 11, ¶ 66.[22] But denying him access based on the Lists is not retaliation for exercising his rights because Plaintiff's name appearing on the Lists is not speech, much less constitutionally protected speech. As for the July 2020 event, Plaintiff alleges an unknown security guard removed him from the event after his disruption but does not allege that the guard retaliated against him based on the content of his speech. Indeed, the FDLE Flyer demonstrates that security removed Plaintiff for disrupting the event by noting that "[d]uring the press

---

[22] Plaintiff alleges that the unknown security guard also removed him from the event "for making a statement about a viewpoint in which the Governor disagreed with." Compl. at 10, ¶ 57. The remaining sections, however, will demonstrate that this additional allegation does not state a claim both because it is conclusory and thus not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678, and because it does not demonstrate that Governor DeSantis or his Executive Office removed him because of his speech.

conference, Thomas Kennedy (DOB 03/01/1991) disrupted the conference by directing verbal outbursts towards Governor DeSantis. Kennedy was escorted out without further incident." Compl. at 11-12, ¶ 70.[23]

In addition, Plaintiff neither alleges nor establishes that "the [D]efendants were subjectively motivated to retaliate because the [P]laintiff[] engaged in protected speech," which "requires that the [D]efendants had 'actual knowledge' of the protected speech." *Indigo Room, Inc. v. City of Fort Myers*, 589 F. App'x 938, 947 (11th Cir. 2014) (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798–800 (11th Cir. 2000)). Demonstrating "actual knowledge" would require Plaintiff to show both that Governor DeSantis or his Executive Office knew about Plaintiff's prior speech and denied him entry or removed him from the events to punish him for his speech. *See Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) ("In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech."). Plaintiff does not allege either requirement. *See Smith v. City of Greensboro*, 647 F. App'x 976, 982–83 (11th Cir. 2016) (per curiam) (dismissing a First Amendment retaliation claim because plaintiff offered no evidence he knew about the protected conduct).

Accordingly, because Plaintiff does not plausibly allege that he engaged in constitutionally protected conduct, and that Defendants denied him access to, or removed him from events based on that conduct, Count I fails to state a claim for First Amendment retaliation.

2.  *Count II does not state a "Class of One" claim under the Fourteenth Amendment's Equal Protection Clause*

Count II alleges that Defendants denied Plaintiff equal protection under the law by preventing him from entering, or removing him from, the six events based on the content and viewpoint of his speech. Compl. at 14, ¶ 83. This claim, however, does not allege a typical equal protection claim. Those claims fall into three categories. *625 Fusion, LLC v. City of Fort Lauderdale*, 2022 WL 970881, at *17 (S.D. Fla. Mar. 31, 2022) (quoting *E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987)). The first "is a claim that a statute

---

[23] Plaintiff's description of the FDLE Flyer lists the event as July 13, 2020, rather than July 14, 2020. This is likely a scrivener's error because the Complaint describes the same event at Jackson Memorial Hospital occurring on July 14, 2020. Compl. at 5, ¶ 22.

discriminates on its face." *E & T Realty*, 830 F.2d at 1112 n.5. The second is a claim that "neutral application of a facially neutral statute has a disparate impact" and was enacted with "purposeful discrimination." *Id.* The third is a claim that the "defendants are unequally administering a facially neutral statute." *Id.* Plaintiff's claim does not fit into those categories.

Instead, it is a "class of one" claim in which Plaintiff alleges "[he] is the only entity being treated differently from all other similarly situated entities, even though [he] does not belong to a suspect classification." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Specifically, Plaintiff alleges that Defendants treated him differently than other persons at the events because of his viewpoint, not his membership in a protected group. *See* Compl. at 5-11. But to prevail on such a claim, Plaintiff must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021) (quoting *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006)).

Courts apply this "similarly situated" requirement "with rigor." *PBT Real Est., LLC*, 988 F.3d at 1285 (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007)). Plaintiffs must show that they and any comparators are "similarly situated 'in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker.'" *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Griffin Indus., Inc.*, 496 F.3d at 1207). In fact, the "[entities] being compared 'must be prima facie identical in all relevant respects.'" *Griffin Indus., Inc.*, 496 F.3d at 1204 (quoting *Campbell v. Rainbow City,* 434 F.3d 1306, 1314 (11th Cir. 2006)).

Accordingly, to state a "class of one" claim, Plaintiff must identify another journalist that has disrupted a Governor's press event but whom Defendants allowed to attend, or remain present at, subsequent events. Plaintiff, however, does not identify a similarly situated comparator, much less one that is *prima facie identical*. Accordingly, Count II does not state a prima facie "class of one" claim and must be dismissed. *See Griffin Indus., Inc.*, 496 F.3d at 1205 ("A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another.") (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367–68 (11th Cir.1998)).

16

3. *Counts III and IV do not state a claim under the Fourteenth Amendment's Due Process Clause*

Counts III and IV allege that Governor DeSantis and FDLE violated Plaintiff's procedural due process rights by adding his name to the Lists and denying him entry to, or removing him from, the six events. Specifically, Plaintiff argues that he had a liberty interest in being "free from false governmental stigmatization as an individual[] associated with unlawful activity" and in "attending and being able to participate in [F]irst [A]mendment protected activities." Compl. at 14-15, ¶¶ 88-89 & 93. And he claims Governor DeSantis and FDLE deprived him of both interests without providing a "legal mechanism that affords him notice and an opportunity to contest th[os]e deprivations of his liberty interests." Neither count states a procedural due process violation. *Id.*

To establish a procedural due process violation, a plaintiff "must show: (1) that he possessed a 'constitutionally protected interest in liberty or property;' (2) that the government 'deprived [him] of that interest;' and (3) that 'the procedures accompanying that deprivation are constitutionally inadequate.'" *Bradshaw v. Fed. Aviation Admin.*, 8 F.4th 1215, 1224 (11th Cir. 2021) (quoting *Agility Def. & Gov't Servs. v. U.S. Dep't of Def.*, 739 F.3d 586, 591 (11th Cir. 2013)). Plaintiff does not satisfy the first prong because he did not have a liberty interest in avoiding "false stigmatization" or attending the six events.

The Supreme Court has held that "injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment." *Behrens v. Regier*, 422 F.3d 1255, 1259 (11th Cir. 2005) (citing *Paul v. Davis,* 424 U.S. 693, 701–02 (1976)). Indeed, plaintiffs invoking the Fourteenth Amendment's procedural protections must "establish more than a mere defamation claim." *Behrens*, 422 F.3d at 1259; *see also Siegert v. Gilley,* 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."). Specifically, "[t]o establish a liberty interest sufficient to implicate the [F]ourteenth [A]mendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law." *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1296 (11th Cir. 2003); *see also Cannon v. City of West Palm Beach,* 250 F.3d 1299, 1302 (11th Cir. 2001) ("Essentially, a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest

before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause.").

Accordingly, assuming *arguendo* that Defendants "stigmatized" Plaintiff by including his name on the Lists, he must plausibly allege that this stigma also deprived him of a previously recognized property or liberty interest recognized in state law. *See Behrens*, 422 F.3d at 1260 ("In considering what satisfies the 'plus' prong of this analysis, the *Paul* Court looked to whether state action had significantly altered or extinguished 'a right or status previously recognized by state law.'") (quoting *Paul,* 424 U.S. at 711). Plaintiff clearly does not. Indeed, he does not allege that any reputational damage caused by Governor DeSantis and FDLE adding his name to the Lists altered or extinguished any right, much less one recognized by state law. Thus, Plaintiff's alleged reputational injury "does not rise to the level of a constitutional deprivation and his procedural due process claim must fail." *Behrens*, 422 F.3d at 1261 (citing *Von Stein v. Brescher,* 904 F.2d 572, 581 (11th Cir. 1990)).

Likewise, Plaintiff did not have a liberty interest in attending the four events on private property for the same reason he was not engaged in protected conduct when he was denied access to, or removed from, the events – he did not have a right to attend them. *See* subsection (1), *supra*.[24]

Accordingly, because Plaintiff did not have a liberty interest in his reputation or attending the Governor's events, Counts III and IV fail to state a procedural due process claim under the Fourteenth Amendment.

### 4. *Plaintiff's claims against Governor DeSantis under the Fifth Amendment are not cognizable*

Counts III through VIII allege that Governor DeSantis and FDLE violated the Fifth Amendment's Due Process Clause by adding Plaintiff's name to the Lists and denying him entry to, or removing him from, the six events. Specifically, Counts III and IV allege both actions violated Plaintiff's Fifth Amendment procedural due process rights. Compl. at 14-17. Counts V and VI claim that adding Plaintiff's name to the Lists violated his Fifth Amendment substantive due process rights. *Id.*, at 17-18. And Counts VII and VIII insist that Governor

---

[24] And Counts III and IV also fail to state a procedural due process violation against Governor DeSantis for denying him access to the April 2021 and July 2021 events without notice and a hearing for the same reason Count I failed to state a First Amendment claim for the same events – Plaintiff alleges Miami-Dade County and City of Miami officers – not Governor DeSantis or his Executive Office – denied him entry to those events.

DeSantis and FDLE violated the Fifth Amendment's "void for vagueness" doctrine by using "unconstitutionally vague" criteria when deciding whether to include Plaintiff's name on the Lists. *Id.*, at 18-19.

It is well-established, however, that the "Fifth Amendment . . . protects a citizen's rights against infringement by the federal government, not by state government." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (citing *Buxton v. Plant City,* 871 F.2d 1037, 1041 (11th Cir. 1989) ("The [F]ifth [A]mendment to the United States Constitution restrains the federal government, and the [F]ourteenth [A]mendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law.")). And it is undisputed that Governor DeSantis and the Defendants acted, at all times, in their official capacities as city or state officials – not as federal actors. Compl. at 4-5, ¶¶ 13-17. Accordingly, Plaintiff's § 1983 claims in Counts 3, 4, 5, 6, 7, and 8 alleging a Fifth Amendment violation fail to state a claim for relief and must be dismissed.


Dated: August 19, 2022,                        Respectfully submitted,



                                               /s/ *Nicholas J.P. Meros*
                                               NICHOLAS J.P. MEROS (Fla Bar #0120270)
                                               *Deputy General Counsel*
                                               EXECUTIVE OFFICE OF THE GOVERNOR
                                               The Capitol, PL-5
                                               400 S. Monroe Street
                                               Tallahassee, FL 32399
                                               Phone: (850) 717-9310
                                               Facsimile: (850) 488-9810
                                               nicholas.meros@eog.myflorida.com
                                               gov.legal@eog.myflorida.com

                                               *Counsel for Governor Ron DeSantis*

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2) of the U.S. District Court for the Southern District of Florida, Governor DeSantis requests oral argument on this Motion. Governor DeSantis believes oral argument will help the Court resolve the Motion quickly and efficiently. Governor DeSantis estimates 30 minutes per side will be sufficient.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed a true and correct copy of the foregoing with this Court's CM/ECF system on August 19, 2022, which effected service on all counsel of record.

*/s/ Nicholas J.P. Meros*
Nicholas J.P. Meros