IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

THOMAS KENNEDY, individually,

    Plaintiff,                                                 Case No. 1:22-cv-21827-KMW

v.

RON DESANTIS, in his official
capacity of Governor of the State of Florida,
MARK GLASS, in his official capacity of
Acting Commissioner of The Florida Department
of Law Enforcement, MIAMI-DADE COUNTY,
a political subdivision of the state of Florida,
CITY OF MIAMI, a municipality of
the State of Florida,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MARK GLASS' MOTION TO DISMISS AMENDED COMPLAINT, AND IN THE ALTERNATIVE, MOTION TO STRIKE**

Plaintiff, THOMAS KENNEDY ("Plaintiff"), by and through his undersigned counsel, pursuant to the applicable Federal Rules of Civil Procedure and the Local Rules for the Southern District of Florida hereby files his Response in Opposition to Defendant Mark Glass, in his capacity as Commissioner of the Florida Department of Law Enforcement ("Commissioner Mark Glass")'s Motion to Dismiss Amended Complaint, and in the Alternative, Motion to Strike ("Motion to Dismiss / Motion to Strike") [DE 61]. In support thereof, Plaintiff states as follows:

**Introduction and Background**

This is a civil rights case where Commissioner Glass instructed the Florida Department of Law Enforcement ("FDLE") to investigate Plaintiff based on the content or viewpoint of the Plaintiff, which resulted in the "No Entry List" and the "Situational Awareness Flyer" that was

then circulated by Commissioner Glass and the FDLE to Defendants Miami-Dade County and City of Miami, and likely other agencies, along with instructions to prevent Plaintiff from attending Governor DeSantis press events, which resulted in the violating of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

Commissioner Mark Glass, in his Motion to Dismiss / Motion to Strike goes to great lengths to use the language in the Situational Awareness Flyer that was created by FDLE against Plaintiff as an argument against Plaintiff's allegations set forth in his Amended Complaint.  **The Situational Awareness Flyer was attached to the Complaint for the sole purpose of showing that the Defendants are using this document to attack Plaintiff for the content of his viewpoint and speech, which is a violation of Plaintiff's constitutional rights.[1]**

Commissioner Glass is attempting to use the language within the Situational Awareness Flyer, that was created by FDLE, in an inappropriate attempt to suggest that the Situational Awareness Flyer should be read in conjunction with the allegations of the Amended Complaint, as if the exhibit were an attached contract.  The Situational Awareness Flyer is not a contract and should not be treated as if it were.  The arguments used by Commissioner Glass in his Motion to Dismiss / Motion to Strike that are based on language in the Situational Awareness Flyer should not be afforded much weight for purposes intended by Commissioner Glass in his Motion to Dismiss / Motion to Strike.  Further, Commissioner Glass is adding factual assertions throughout his Motion to Dismiss / Motion to Strike, which are not appropriate at this stage.  Commissioner Glass' arguments which attempt to use the language in the Situational Awareness Flyer and by

---

[1] Plaintiff would have also attached the No-Entry List if Plaintiff had a copy of the list. Plaintiff has propounded discovery to Commissioner Glass and the other Defendants and is seeking a copy of the No Entry List.

making factual arguments not found in the four corners of the Amended Complaint, are a misplaced attempt to argue for Summary Judgment at the motion to dismiss stage.

Commissioner Glass argues that the Amended Complaint should be dismissed for three reasons: 1) that the FDLE is entitled to Eleventh Amended sovereign immunity; 2) that the four corners of the Complaint show that Plaintiff is not engaged in a protected right; and 3) that the press conferences were non-public forums.

**I. Commissioner Mark Glass is not entitled to Eleventh Amendment Sovereign Immunity**

Commissioner Glass goes to great lengths to argue that the Eleventh Amendment to the Constitution bars Plaintiff from bringing suit in federal court against Commissioner Glass. While the Eleventh Amendment does generally protect State agencies from being sued in federal court, the U.S. Supreme Court, in Ex Parte Young, 209 U.S. 123 (1908) created an exception to the general rule.

> "The landmark case of Ex parte Young, 209 U.S. 123, 155-57, 28 S. Ct. 441, 52 L. Ed. 714 (1908), however, created an exception to this general rule of immunity. The exception allows state officials to be sued in their official capacities by plaintiffs "seeking prospective equitable relief to end continuing violations of federal law." Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999) (emphases omitted). Courts have understood Ex parte Young's exception to sovereign immunity to be based on the legal fiction that state officials act ultra vires "when they enforce state laws in derogation of the Constitution," and are therefore stripped of official immunity. Id. at 1336-37; *see also* Va. Off. for Prot. & Advoc. v. Stewart, 563 U.S. 247, 254-55, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011) (explaining Ex parte Young as "rest[ing] on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes" (citation omitted)). Reprod. Health Servs. v. Strange, 3 F.4th 1240, 1255 (11th Cir. 2021). "For courts to enjoin enforcement of an allegedly unconstitutional law under Ex parte Young, the state-official defendant must have "some connection with the enforcement of the act." 209 U.S. at 157. Our decision in Summit illustrates the meaning of "some connection" in the Eleventh Circuit. In Summit, a group of abortion providers sued the Alabama attorney general and governor, seeking an injunction against the enforcement of what they claimed were unconstitutional partial-birth and post-vitality abortion statutes. Id. at 1329-31. The abortion providers specifically challenged provisions permitting criminal enforcement and private civil enforcement of the statute against abortion providers who did not abide by the statutory requirements. Id. The defendants

claimed that the suit was barred by the Eleventh Amendment. *Id.* at 1329. With respect to the challenges against the criminal-liability provisions of the statutes, we disagreed, finding that the Ex parte Young exception to sovereign immunity applied. *Id.* at 1341. But we reached the opposite result when it came to the private civil-enforcement provisions. *Id.* at 1341-42. "Since neither the Governor, the Attorney General, nor the District Attorney—the only defendants in [that] case—ha[d] any relationship to the enforcement of [that] provision, we conclude[d] that the Ex parte Young doctrine d[id] not apply." *Id.* at 1342. Reprod. Health Servs. v. Strange, 3 F.4th 1240, 1255 (11th Cir. 2021).

In this case, Plaintiff is seeking injunctive relief from Commissioner Glass, as he is the head of the Florida Department of Law Enforcement, which, at Commissioner Glass' direction, 1) created and distributed the Situational Awareness Flyer; 2) created and distributed the No-Entry List; 3) instructed local law enforcement, including the City of Miami police and the County of Miami-Dade police to prohibit Plaintiff from entry to Governor DeSantis press events.  The Amended Complaint clearly alleges that the unconstitutional acts were committed by Commissioner Glass, and that he is the real party in interest.  The Amended Complaint alleges throughout, that Commissioner Glass himself was directing these actions, which resulting in the violations of Plaintiff's constitutional rights.

Despite the plain language of the allegations set forth in the Amended Complaint which alleges that Commissioner Glass was directly involved with the unconstitutional acts against Plaintiff, Commissioner Glass argues that the Amended Complaint is really not against Commissioner Glass, but instead, against the FDLE, and therefore the FDLE is the real party in interest, not Commissioner Glass.  This is not accurate based on the plain reading of the Amended Complaint.

The exceptions set forth in Ex parte Young apply in this case.

## II. Plaintiff states valid claims

Commissioner Glass argues that Plaintiff does not have an enforceable right to claim press access and then interrupt the Governor's press conferences.  This is another attempt to insert facts

not found in the four corners of the Amended Complaint and an attempt to use the FDLE created Situational Awareness Flyer to argue that the Situational Awareness Flyer's contents are part of Plaintiff's allegations. Nowhere in the Amended Complaint does Plaintiff allege that he is seeking access to Governor DeSantis press events for the purpose to interrupt the Governor's press events. Nowhere in the Amended Complaint does the Plaintiff allege that he is seeking a "license to encroach on press conferences" as alleged by Commissioner Glass in Paragraph 31 of his Motion to Dismiss / Strike. Further, Commissioner Glass' section B of the Motion to Dismiss / Motion to Strike seeks to undermine Plaintiff's claim that he is a journalist. These arguments are inaccurate, unfounded, and are not appropriate at this stage of the litigation.

**II. Whether the DeSantis Press events were Public vs Non-Public Forums are a factual issue**

In Section C of Commissioner Glass' Motion to Dismiss / Motion to Strike, he argues that the DeSantis press events that Plaintiff is seeking access to are actually "Non-Public Forums" and therefore the Government is allowed to restrict Plaintiff's first amendment rights. Plaintiff disagrees with these factual allegations, and such arguments by Commissioner Glass are factual assertions not found in the four corners of the Amended Complaint and are not appropriate at this stage of the litigation. Additionally, Commissioner Glass argues that the restrictions against Plaintiff are reasonable as "Plaintiff was denied admittance to the Governor's press conference after he had already abused his license to be present at the initial conference referenced by the Plaintiff." Paragraph 42 of Commissioner Glass' Motion to Dismiss / Motion to Strike. Once again, Commissioner Glass' allegations are inaccurate and not appropriate at this stage of the litigation, and Commissioner Glass is attempting to improperly argue summary judgment prematurely.

## CONCLUSION

Accordingly, Defendant Commissioner Glass' Motion to Dismiss / Motion to Strike Plaintiff's Amended Complaint should be denied because Plaintiff alleged legal elements, ultimate facts, and inferences in the pleadings, that when read in the light most favorable to Plaintiff, sufficiently state a cognizable cause of action against the Commissioner Glass.

<u>**/s/Khurrum Wahid**</u>
Khurrum Wahid, Esq.
WAHID VIZCAINO GELLER LLP
2103 Coral Way, Suite 401
Miami, Florida 33145
khurrum@wvmlawfirm.com
khurrum@wvglegal.com
(305)444-4303
(305)444-4302

<u>**     /s/ Khurrum Wahid     **</u>
Counsel for Plaintiff
Florida Bar 178764

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2022, a true and correct copy of the foregoing was filed with the Court and to the Clerk of Court via ECF.

<u>**/s/Khurrum Wahid**</u>
Khurrum Wahid, Esq.
WAHID VIZCAINO GELLER LLP
2103 Coral Way, Suite 401
Miami, Florida 33145
khurrum@wvmlawfirm.com
khurrum@wvglegal.com
(305)444-4303
(305)444-4302

<u>**     /s/ Khurrum Wahid     **</u>
Counsel for Plaintiff

                                                   Florida Bar 178764